IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                                    No.  03-40054-02-SAC

CYNTHIA MAZE MOTEN,

Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the government's renewed

motion for determination of a breach of the plea agreement (Dk. 70) in which the

government seeks a ruling that the defendant advanced positions in her sentencing

memorandum (Dk. 69) that are in breach of the plea agreement.  The defendant

denies she has breached the plea agreement and explains her sentencing

memorandum to be an effort to clarify and expand her position on certain facts

alleged in the government's sentencing memorandum and to argue for a sentencing

departure to home detention or probation as authorized under Chapter 5 of the

sentencing guidelines and a sentence tailored by consideration of the other

sentencing factors in 18 U.S.C. §  3553(a) as now allowed by *United States v.*

*Booker*, 125 S. Ct. 738, 2005 WL 50108 (Jan. 12, 2005).  (Dk. 75).  In reply, the

government repeats its position on the issues and also disputes the defendant's characterization of the prosecutor's actions as "threatening" at the change of plea hearing.  (Dk. 76).

On April 7, 2005, the parties presented their arguments and evidence at a hearing.  On the issue of the defendant's recitation of facts in her sentencing memorandum contradicting the stipulated factual basis in the plea agreement, the government offered that this goes only to the acceptance of responsibility adjustment and to the government's withdrawal of its recommendation for this adjustment.  The government suggested the court could determine this issue at the time of sentencing.  As for the defendant's request for a sentence of non-imprisonment, the government reiterated that this request violates the plea agreement which precludes the defendant from seeking a "downward adjustment." In support of this position, the government presented the testimony of Mike Francis, the attorney who negotiated the plea agreement and represented the defendant at the change of plea hearing.  Francis testified that the government drafted this particular term of the plea agreement and that he understood this term to prevent the defendant from asking for any downward change in her sentence. The government presented the testimony of Mike Francis and government agent, Peter Blackburn, both of whom said he did not witness the prosecutor threaten the

2

defendant during a recess from the change of plea proceeding.

At the hearing, the defendant argued her request for home detention or probation was not a request for a "downward adjustment" which is the term of the plea agreement in issue that the government drafted. The defendant minimized any purported conflicts between the recitation of facts in her sentencing memorandum and the agreed factual basis and explained her understanding of what transpired at the change of plea proceeding in this regard. The defendant said the prosecutor's demeanor and words during the recess were threatening to her and were among her reasons for accepting the factual basis. In support of her position, the defendant offered her testimony and that of her brother, ex-husband, and former mother-in-law.

*Recitation of Facts in Defendant's Sentencing Memorandum*

The government contends the defendant should be denied acceptance of responsibility for giving conflicting statements about her involvement and for now denying or contesting relevant conduct earlier admitted in the written plea agreement. The government bases this contention on what the defendant argued in her sentencing memorandum. The defendant filed her memorandum in response to the government's sentencing memorandum which advocated following the guideline calculations appearing in the Presentence Report ("PSR"). The defendant did not

file her sentencing memorandum in support of any pending, unresolved objections to the PSR, as she had already withdrawn all of her objections to the PSR.

The well-settled rule in this circuit is that when no objection is made the court may treat the facts appearing in the PSR as admitted. *United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir.), *cert. denied*, 525 U.S. 988 (1998). A sentencing court is not required to hear an objection to the PSR if the objection is not raised within fourteen days of counsel's receipt of the report. The court may allow a party to advance a new objection at any time before sentencing if "good cause" is shown. Fed. R. Crim. P. 32(f)(1) and (i)(1)(D). Absent a showing of good cause, the sentencing court may proceed as if no objection had been made and rely upon the PSR without making additional independent findings of fact. *United States v. Overholt*, 307 F.3d 1231, 1251-52 (10th Cir. 2002).

In her sentencing memorandum, the defendant does not object to the facts or enhancements appearing in the PSR and does not request the court to make any specific findings or rulings on those factual matters raised in her memorandum. Based on the well-settled law of this circuit, the defendant presumably knew for purposes of the guideline sentence recommended in the PSR that the court would treat the facts in the PSR as admitted, would proceed as if no objections had been made, and would not make any independent factual findings.

4

In short, the defendant is not contesting that the court may rely on those facts as sustained by the factual basis in determining the sentencing range under the guidelines.

The court views the defendant's sentencing memorandum to have a two-fold purpose.  The defendant first takes issue with the government's efforts to characterize the defendant as personally and individually involved in many of the unlawful activities carried out by the conspiracy for which the sentencing enhancements were recommended.[1]  The defendant emphasizes that the factual basis in the written plea agreement refers to the "defendants" as having committed the different conspiratorial conduct without offering details as to what actions the defendant Moten personally or individually committed.  The defendant refers to the change of plea proceeding during which she acknowledged certain criminal

---

[1]The sentencing guidelines recognize a distinction between the scope of a charged conspiracy and the relevant conduct resulting from jointly undertaken criminal activity.  The sentencing guidelines include as relevant conduct that which was reasonably foreseeable and in furtherance of the jointly undertaken criminal activity.  U.S.S.G. § 1B1.3(a)(1).  The scope of jointly undertaken criminal activity is not necessarily co-extensive with the scope of the entire charged conspiracy, for a defendant's accountability under relevant conduct "only extends to the criminal activity that he agreed to undertake."  *United States v. Dazey*, —F.3d—, 2005 WL 846227 at *21 (10th Cir. Apr. 13, 2005).

activities as having occurred without admitting that she personally committed them.[2]

The defendant argues her position was then and is now that her business partners

had actual knowledge of the criminal activity and her personal involvement in the

same was limited.  (Dk. 75, pp. 2-3).  The other apparent purpose to the

defendant's sentencing memorandum was to provide the court with a fuller

understanding of the facts and circumstances advanced by the government in

support of the guideline enhancements.   Recent Tenth Circuit decisions after

*Booker* endorse sentencing courts giving fuller consideration to the facts supporting

enhancements based on other sentencing factors under 18 U.S.C. §  3553(a) and

tailoring a sentence calculated initially under the guidelines.[3]

---

[2]A fair reading of the transcript from the change of plea proceeding shows the defendant understood she was admitting only that she was guilty of count 42, that she obstructed the investigation as part of the conspiracy described in the plea agreement, and that she was stipulating to the truthfulness of all the conspiratorial activity included in the plea agreement.  (Dk. 78, pp. 23-29).  Nor can there be any serious dispute that the agreed facts in the plea agreement generally do not specify which defendant individually committed the different acts.

[3]In *United States v. Trujillo-Terrazas*, —F.3d—, 2005 WL 846230 (10th Cir. Apr. 13, 2005), the panel observed that "[t]he relatively trivial nature of" the defendant's prior criminal conduct was "at odds with the substantial 16 level enhancement suggested by the Guidelines" and that the "blunter approach" used by the Guidelines of considering only the conviction and not the actual underlying conduct "could be seen to run afoul of § 3553(a)(6), which strives to achieve uniform sentences for defendants with similar patterns of conduct."  2005 WL 846230 at *3.  In *United States v. Dazey*, —F.3d—, 2005 WL 846227 (10th Cir. Apr. 13, 2005), the panel observed that a sentencing judge using discretionary

The court is persuaded to construe the defendant's sentencing memorandum as set forth above and to preserve the defendant's entitlement to an acceptance of responsibility adjustment despite the government's opposition. The court believes the defendant's sentencing memorandum was not filed to contradict the stipulated facts appearing in the plea agreement but to achieve the limited purposes described above.

*Downward Adjustment*

In the plea agreement, the defendant agreed to "not seek downward adjustments, other than those discussed above . . ., related to acceptance of responsibility." (Dk. 43, plea agrmt. p. 7). In her sentencing memorandum, the defendant concluded with a request that "the Court sentence her to a probation term or house arrest." (Dk. 69, p.4). The government contends the defendant's request seeks a downward adjustment in breach of the plea agreement. For this

---

guidelines might impose a sentence less than that prescribed by a certain amount of fraud loss:

> In the post-*Booker* world, district courts are accorded greater latitude to determine sentences in light of the "seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). District courts might reasonably take into consideration the strength of the evidence in support of sentencing enhancements, rather than (as in the pre-*Booker* world) looking solely to whether there was a preponderance of the evidence, and applying Guidelines-specified enhancements accordingly.

2005 WL 846227 at *22.

breach, the government seeks specific performance of the plea agreement and, in the alternative, to treat the plea agreement unenforceable in part and relieve the government of its obligations in paragraphs 4(c), (d) and (e).  Should its motion be granted, the government asks that the court sentence the defendant to 51 to 63 months in prison.

The defendant denies that her sentencing memorandum includes a request for a "downward adjustment."  She argues this ambiguous term should be construed against the government which drafted the plea agreement as referring only to adjustments under Chapter 3 of the sentencing guidelines.  The defendant argues this provision should not be construed to prevent her from seeking a downward departure under Chapter 5 or from arguing the other sentencing factors appearing in 3553(a).  In reply, the government insists "downward adjustment" is unambiguous and should be reasonably construed to encompass downward departures.

The court's analysis of the parties' obligations under a plea agreement is guided by general principles of contract law.  *United States v. Peterson*, 225 F.3d 1167, 1171 (10th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).  If unambiguous, the plea agreement's express terms control.  *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003).  If ambiguities are present, they are

8

resolved against the government as the drafter of the plea agreement. *Id*. The court is to analyze the agreement based upon the defendant's reasonable understanding at the time of entering the plea. *United States v. Bunner*, 134 F.3d 1000, 1003 (10th Cir.), *cert. denied*, 525 U.S. 830 (1998); *see United States v. Werner*, 317 F.3d 1168, 1170 (10th Cir.), *cert. denied*, 540 U.S. 832 (2003).

The party asserting a breach of the plea agreement has the burden of proving the same by a preponderance of the evidence. *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir.), *cert. denied*, 516 U.S. 1000 (1995). "'It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the Government of its reciprocal obligations under the agreement.'" *United States v. Novosel*, 102 Fed. Appx. 138, 2004 WL 1406319, at *2 (10th Cir. 2004) (quoting *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018 (1981)). "Nevertheless, because important due process rights are involved in the area of plea negotiations, a judicial determination of defendant's breach is required; whether a defendant has breached the agreement 'is not an issue to be finally determined unilaterally by the government.'" *Id*. "'If the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of

law.'"  *Id.*  "In other words, the government may not unilaterally declare a breach of plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement."  *United States v. Guzman*, 318 F.3d at 1196 (citations omitted).

In guideline parlance, Chapter 3 provisions are entitled "Adjustments." The guidelines treat "adjustments as distinct from departures."  *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1135 n. 8 (10th Cir. 2003) (citing U.S.S.G. § 1B1.1(c), (e), and (i) and *United States v. Stokes*, 347 F.3d 103, 107 n. 3 (4th Cir. 2003) ("noting the court did not need to decide whether the PROTECT Act's amendments to the applicable standard of review applied because the case only involved downward 'adjustments' and not 'departures'")).  The court recently ran a Westlaw search of Tenth Circuit decisions using the term, "downward adjustment."  Of the fifty most recent opinions, all but one exclusively used this term to refer to one or more of the following guideline provisions: the mitigating role adjustment in U.S.S.G. § 3B1.2, the acceptance of responsibility adjustment in U.S.S.G. § 3E1.1, and the safety valve adjustment in U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2.

Drafted prior to the Supreme Court's decisions in *Blakely* and

10

*Booker*, the plea agreement contemplated little more than the court's application of the sentencing guidelines.  Thus, any term of this plea agreement that addresses sentencing matters should be construed consistent with the language and scope of the sentencing guidelines.  The plain meaning of a "downward adjustment" under the guidelines and this plea agreement is a Chapter Three adjustment or a related safety valve adjustment that reduces the base offense level.  Adding the modifier "downward" merely narrows the referenced adjustments rather than expanding the term now to include "downward departures" addressed in Chapter 5.  To divorce "downward adjustment" in the plea agreement from its guideline context would create an ambiguity that must be resolved against the government as the drafter of this term.   The court finds that the plea agreement as drafted and construed does not preclude the defendant from asking for probation or home detention.  The government has not carried its burden of proving the defendant breached the plea agreement.

## Allegation of Being Threatened

The government disputes the defendant's allegation that the prosecutor "threatened" the defendant outside the courtroom during a recess in the change of plea proceeding.  The alleged threat described in the defendant's filing is that the defendant "either agrees to the recitation of the facts as printed or she had

no agreement at all." (Dk. 75, p. 3). The government contends this allegation is "blatantly false" and the defense counsel lacks any good faith basis for including it in a pleading. The government introduced evidence at the hearing disputing that the prosecutor threatened the defendant. The defendant also presented testimony supporting her allegation.

The defendant includes this alleged threat to explain in part why she accepted the stipulated facts as written despite her earlier expressed reluctance to accept the entire statement. The defendant, however, does not seek to withdraw her guilty plea based upon this threat and does not contend the threat justifies any other legal relief. From the evidence offered at the hearing, the court finds that the prosecutor's statement and conduct outside the courtroom are not what should be called improper, vindictive, or offensive to due process. The defendant's use of "threaten" to mean a warning or announcement of an intended or possible action would not be an objectionable use of this term based on the facts presented at the hearing. The defendant specifically linked the allegation of a threat to the prosecutor's statement of warning. Indeed, courts frequently refer to a prosecutor "threatening" something during plea negotiations without implicating anything negative about the prosecutor's motive or conduct. For example, "[e]very new element that a prosecutor can threaten to charge is also an element that a defendant

12

can threaten to contest at trial and make the prosecutor prove beyond a reasonable doubt." *Blakely v. Washington* 124 S.Ct. 2531, 2541 -2542 (2004). "[W]e have upheld the prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty . . . ." *Alabama v. Smith*, 490 U.S. 794, 802 (1989). The court denies the government's request for relief from this allegation.

IT IS THEREFORE ORDERED that government's renewed motion for determination of a breach of the plea agreement (Dk. 70) is overruled.

Dated this 26th day of April, 2005, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge