IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                        Plaintiff,

Vs.                                              Case No. 03-40054-02-SAC

CYNTHIA MAZE MOTEN,

                        Defendant.

MEMORANDUM AND ORDER

The case comes on for sentencing of the defendant following her guilty plea on May 12, 2004. Defendant pled guilty to Counts 42 and 44 of the indictment, which are, respectively, obstruction of a criminal investigation of a health care offense, and forfeiture.

Defendant's plea hearing and subsequent events gave rise to multiple briefings by the parties and corresponding rulings by this court. *See, e.g.,* Dk. 59, 68, 69, 70, 81, 84, 85, 100. The unusual procedural history of this case coupled with the court's deliberation accounts for the delay in sentencing this defendant. The court issues this memorandum as its statement of reasons for its sentence pursuant to 18 U.S.C. § 3553(c).

**Procedural posture of case**

The PSR begins with a base offense level of four points and adds a loss amount of 16 points pursuant to § 2B1.1(b)(1)(I), producing an offense level of 20. The PSR adds a two-point enhancement for using sophisticated means, a two-point enhancement for defendant's role in the offense and a three-point reduction for her acceptance of responsibility. This equates to a total offense level of 21. Because defendant's criminal history category is I, the Sentencing Guidelines range is 37 to 46 months. The government filed no objections to the PSR, and objections previously filed by defendant were expressly withdrawn by current defense counsel. Dk. 61. Thereafter, defense counsel filed a response to the government's sentencing memorandum, taking issue with certain facts asserted by the government. Therein defense counsel asserted that *Booker* permitted the court to consider a non-prison sentence for the defendant, and requested a sentence of probation or house arrest. Dk. 69, p. 4.

At the sentencing hearing held February 9, 2006, defendant presented evidence in support of her request for a non-prison sentence. Given the court's familiarity with the prior history of this case, the court's prior rulings regarding issues related to sentencing, the statements of defense counsel during the February 9th hearing, and the relative newness of post-*Booker* focus on § 3553(a) factors at

sentencing hearings, the court considers the testimony adduced during the February 9th hearing to be addressed to the § 3553(a) factors and the court's discretion rather than to raise or renew any objection under the sentencing guidelines.[1] Although this is admittedly a fine line in the present case, the issue whether defendant should or should not receive a non-prison sentence is properly before the court and has not previously been addressed.

After *Booker*, sentencing courts no longer mandatorily apply the guidelines but rather consult them and "take them into account" along with the other factors set forth in 18 U.S.C. § 3553(a) when sentencing. The discretion of sentencing courts is now not restricted to fashioning sentences within the Guideline ranges. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731(2005). Sentencing courts still must determine first the appropriate sentencing range under the Guidelines and make the factual findings necessary to that determination. *United States v. Serrata*, 425 F.3d 886, 920 (10th Cir. 2005). If after considering this range and the other factors described in 18 U.S.C. § 3553(a), a sentencing court decides on a sentence that is outside the range under the Guidelines, then it must explain its reasons for the departure, as required by 18 U.S.C. § 3553(c)(2). *See*

---

[1] *See* Dk. 43 p. 7(defendant's plea agreement in which she agrees not to seek downward adjustments other than for acceptance of responsibility); Dk. 81(court's order construing that language).

*Serrata*, 425 F.3d at 920.  In short, sentencing "courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before. The only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline range." *United States v. Magallanez*, 408 F.3d 672, 685 (2005) (citations omitted).

### § 3553(a) factors

A sentencing court must consider the following factors under § 3553(a): the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed correctional treatment; the sentencing range established under the applicable Sentencing Guidelines; the pertinent policy statements; the need to avoid unjustified sentence disparities among defendants with similar criminal histories and found guilty of similar conduct; and the need to provide restitution. *See United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 n.3 (10th Cir. 2005).

To the extent there is tension or incongruity among the statutes and guidelines about these sentencing factors and their consideration, the significance of

it after *Booker* "diminishes as sentencing judges are encouraged to exercise their discretion." *United States v. Serrata*, 425 F.3d at 919. These "'sentencing factors articulated in § 3553(a), which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion.'" *United States v. Delacruz-Soto*, 414 F.3d 1158, 1166-67 (10th Cir. 2005). The courts in sentencing need not expressly consider "individually each factor listed in § 3553(a) before issuing a sentence," nor must they "recite any magic words to show" they were "mindful" of these factors. *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005). The court considers below the § 3553(a) factors it finds to be relevant, and finds that a sentence of 24 months is warranted.

*History and Characteristics of the Defendant.* Prior to the offenses in question, defendant maintained lawful continuous employment and financially supported her family. She has not been prosecuted or accused of prior fraudulent conduct, and has fully complied with the conditions of pretrial release. Defendant is a divorcee with four children, is expecting her fifth, and has been an active member of the community and her church. Support for defendant through letters to the court has been considerable.

*Sentencing Goals and Needs: Seriousness of the Offense, Just Punishment, Adequate Deterrence, Public Protection, and Correctional Treatment.* Based on

its personal impression of the defendant and the nature of the offenses to which she plead, the court believes there is little possibility of her repeating her offenses or posing a threat to public safety. The general deterrence of the kind of criminal conduct being punished here requires imprisonment, particularly to offset the financial gains from submitting false documentation and to promote respect for the law on obstruction of health care investigations. However, a sentence in excess of 24 months would be greater than necessary to deter avaricious business persons from manufacturing documents in support of fraudulent billings. Defendant does not present a need for educational or vocational training. As applied to this case, these sentencing purposes counsel definite periods of incarceration, but sentences that are shorter than the sentencing range recommended by the Guidelines.

*Kinds of Sentences Available*. The court is aware that a shorter sentence, even probation, could be imposed, if the other factors and circumstances warranted such sentences. Defendant has requested probation and has presented several witnesses in support of her request, but on balance, the court does not find that their testimony is persuasive or that probation would be appropriate in this case.

*Guideline Range*. Though relegating the Guidelines to an advisory or discretionary status, the Supreme Court in *Booker* expressed its hope that the new

sentencing approach would "maintain[] a strong connection between the sentence imposed and the offender's real conduct-a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *United States v. Booker*, 125 S. Ct. at 757. Apparently building on this expressed hope, the circuit panel in an unpublished opinion in *United States v. Hopkins*, 128 Fed. Appx. 51, *56, 2005 WL 827136 (10th Cir. Apr. 11, 2005), said "it is clear from *Booker*, 125 S. Ct. at 757, that the now-discretionary Guidelines will be a vital barometer of reasonableness on appellate review." Plainly, the Guidelines remain "important to the overall reasonableness of any sentence imposed by a court post-*Booker*," *United States v. Taylor*, 413 F.3d 1146, 1152 (10th Cir. 2005) (citation omitted), to the point of "exert[ing] gravitational pull on all sentencing decisions," *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Because the Guidelines were designed to offer a desirable uniformity in sentencing, courts should pay particular attention to the calculated sentencing range in settling on a reasonable sentence.

The amount of pecuniary loss is the driving consideration of this economic offense under the Guidelines. Defendant agreed in her plea agreement

that "the amount of loss is approximately $2.3 million." Dk. 43, p. 7.[2] Because that amount is greater than $1,000,000 but is less than $2,500,000, the Guidelines substantially increase the base offense level by adding 16 points.

At the evidentiary hearing, defendant presented testimony apparently designed to show that the amount of loss caused by the criminal acts to which she plead was $207,000. That testimony fails to meet the mark. Retired attorney Greg Bien testified that during the course of the investigation leading to this indictment, he represented A & A Medical, a company in which defendant had an interest, and found some billing errors which amounted to approximately $207,000. But he additionally stated that he had no basis for believing that was the total amount, admitted that he did not have access to all the relevant records, and offered this as the reason why he referred defendant's case elsewhere.

The court nonetheless tempers its reliance on the calculated sentencing ranges. Defendant did not plea to the conspiracy charge, but to the obstruction charge, and has consistently and steadfastly denied responsibility for any other acts

---

[2] The PSR reports the total amount of loss as $2,679,847.00, but states that the full amount was unknown to the government at the time of defendant's plea. The PSR thus uses the amount of $2,300,000.00, as agreed to in the plea agreement, as the loss amount for purposes of sentencing.

or omissions alleged in the indictment. [3]  As this court previously found:

> A fair reading of the transcript from the change of plea proceeding shows the defendant understood she was admitting only that she was guilty of count 42, that she obstructed the investigation as part of the conspiracy described in the plea agreement, and that she was stipulating to the truthfulness of all the conspiratorial activity included in the plea agreement. (Dk. 78, pp. 23-29). Nor can there be any serious dispute that the agreed facts in the plea agreement generally do not specify which defendant individually committed the different acts.

Dk. 81, p. 6.  Defendant admitted that she manufactured documents and caused them to be delivered to government inspectors, representing that they supported M & M's Medicaid claims for transportation services.  Dk. 1 (indictment); 43 (plea agreement).

The PSR represents the total amount overpaid by Medicaid for non-medical transportation billed by M & M Transportation (Medicaid) as $1,711,782.00, and by M & M Transportation (Firstguard HMO) as $18,540.00.  In stating that the amount of loss is a greater amount, the plea agreement does not purport to represent the greater amount as the amount attributable to defendant's

---

[3] *See* Dk. 81, p. 5-7 and notes; *United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005) (Even a defendant convicted of conspiracy is accountable under relevant conduct only for the criminal activity that he agreed to undertake; a defendant is not accountable for the conduct of members of a conspiracy "prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. § 1B1.3 n.2.)

obstruction. In fact, the amount of loss attributable to defendant's obstruction is not calculated and no basis for estimation is provided. Because the loss amount stated in the plea agreement overstates the amount of loss attributable to defendant's criminal conduct, the court believes that a reasonable sentence is less than the guidelines range.

Defendant additionally presented testimony to clarify her personal participation in the offense. The record does not show that defendant had knowledge of Medicaid's peer review process or the intent to prevent Medicaid from seeing the whole picture in its normal peer reviews. Nor does the record show that defendant moved money among various companies for the purpose of avoiding detection. Defendant was engaged in a legitimate business and the means she used to defraud Medicaid were limited to manufacturing documents in support of transportation billings, having others do the same, and misrepresenting them to officials. *i.e.*, obstruction.

Defendant did have managerial responsibility at Toddler Town Daycare. She actively participated in the administration of Toddler Town Daycare, possessed decision-making authority greater than or equal to that of her co-defendant, knew generally about the transportation billing practices, and financially benefitted from them. Defendant was in charge of the licensing, the staff, the

curriculum, the hours, the rules, and the hiring and firing. Dk. 89, p. 9, 10, 26. Co-defendant Meier had the day-to-day responsibility for bookkeeping and billing, prepared the list of which children and which activities the company was billing for, input that information into the computer, and sent the billings. *Id*., p. 31-32. The two had a specific division of labor that was enforced until after the investigation began which led to this indictment. *Id.*, p. 10.

Defendant was not directly responsible for the bulk of the transportation billings which underlie the conspiracy charge, and did not execute the task of transportation billings except on those occasions when co-defendant was absent for some reason. Based upon all the testimony to date, the court finds great strength to the evidence that defendant falsified documents to support transportation billings after this investigation began, and no strength to the evidence that this defendant routinely participated prior to that date in the process of sending transportation billings to Medicaid for students who were not actually transported or for non-covered, non-therapeutic services such as trips to a park or swimming pool.

Sentencing defendant to an intermediate term of incarceration will fulfill the Guidelines' goal of "a short but definite period of confinement for a larger

proportion of . . . white collar cases."[4] Defendant has endured personal hardships from a prosecution and sentencing delayed by many months, and faces financial ruin by her business venture. Following her release from prison, her felon status will close some doors leading back to the business world.

*Need to Avoid Unwarranted Sentence Disparities.* This factor addresses "disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The court considers this to be a significant factor in this case supporting a sentence less than 37months.

Co-defendant Meier plead guilty to Counts 1 and 44 of the indictment, respectively, conspiracy and forfeiture. The conspiracy charge essentially alleged that from January 1998 to January 2003, the defendants knowingly and willfully agreed with each other and with other persons to commit the offenses of health care fraud, money laundering, and obstruction of a criminal investigation of health care offenses; and/or to defraud agencies of the United States by impairing their lawful and legitimate functions in administering health care and health plans, including Medicaid, in violation of 18 U.S.C. § 371. Defendant Moten did not plead guilty to the conspiracy charge. Dk. 1.

---

[4]"Fifteen Years of Guidelines Sentencing," United States Sentencing Commission, p. 56 (Nov. 2004).

Co-defendant Meier's PSR concluded that her offense level was 25, which provided for imprisonment of over 55 months. The government then filed a motion for a downward departure pursuant to USSG § 5K1.1based upon Meier's cooperation with the government and her provision of new evidence which led to defendant Moten's plea. In the government's motion, it stated: "Additionally, the government wishes to move for a downward departure that will achieve proportionality in sentencing in comparison to co-defendant Moten." Dk. 63, p. 2. The court granted the motion for downward departure and on May 18, 2005, sentenced co-defendant Molly Meier to 18 months custody, three years supervised release, and restitution.

Regardless of the variety of positions taken by the defendant and the co-defendant,[5] the court believes that the defendants have comparable culpability for their criminal offenses. The defendants have similar records, and have plead guilty to similar, although not identical, offenses. Although the conspiracy charge

---

[5]*Compare* co-defendant Meier's testimony that she and defendant were equally responsible for the transportation billings ( Dk. 89, p. 23, 33, 38-390), with her letter stating: "[Defendant] did not have any knowledge of the transportation logs, how they were or were not kept, or how they were to be filled out. She trusted me in that area and our staff...I do not think it is fair that I receive 18 months and she receives 3-5 years. She was not responsible for that part of the business, I was." (Dk. 69, attachment). *See also* co-defendant's retraction of that letter. (Dk. 89, p. 12-23).

to which co-defendant Meier pled is greater in its scope, time-frame, and execution than the obstruction charge to which this defendant plead, the six- month discrepancy between co-defendant Meier's 18 months of custody and this defendant's 24 months of custody is reasonable given the co-defendant's cooperation with the government and this defendant's failure to do so.  The government has expended a great amount of time and money in bringing this case to this point, and in retrospect, it would likely have been more efficient for all parties to have tried this case rather than to have entered a plea.  In short, the court believes that a sentence greater than 24 months would produce an unjustifiably disparate sentence between this defendant and co-defendant Meier.

*Need to Provide Restitution*.  Restitution is being ordered in this case. Consequently, the defendant's ability to pay the same will resume sooner with a shorter sentence.

**IMPOSITION OF SENTENCE**

After giving careful consideration to the court's prior rulings regarding sentencing, the Sentencing Guidelines range, and the factors under § 3553(a), this court determines that a sentence of  24 months imprisonment for defendant Cynthia Maze Moten is proper.  This sentence captures the seriousness and harm of her offenses without being greater than necessary and is sufficient to comply with the

purposes in § 3553.

IT IS THEREFORE ORDERED that Cynthia Maze Moten shall be sentenced to a term of imprisonment of 24 months;

IT IS FURTHER ORDERED that sentence shall be imposed on February 15, 2006 at 1:30 p.m.;

IT IS FURTHER ORDERED that this memorandum and order shall constitute the court's statement of reasons pursuant to 18 U.S.C. § 3553(c).

Dated this 14th day of February, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge